UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONICCA ELLIS,

                         Plaintiff,

                                                                        Case # 16-CV-6788-FPG
v.                                                                     DECISION AND ORDER

WILLIE C. WASHINGTON,
COUNTY OF MONROE, and
691 ST. PAUL STREET, LLC,

                         Defendants.
_____

## INTRODUCTION

Plaintiff Ronicca Ellis brings this action against Defendants Willie C. Washington, the County of Monroe (the "County"), and the County's landlord, 691 St. Paul Street, LLC (the "Landlord"), arising from Washington's sexual harassment and assault of Plaintiff while she was working under his supervision in the Monroe County Work Experience Program ("WEP"). Now before the Court is the County and the Landlord's motion for summary judgment on all of Plaintiff's claims against them. ECF No. 45. For the reasons below, the motion is GRANTED.

## BACKGROUND[1]

In 2016, Plaintiff participated in Monroe County's WEP, an initiative providing work experience to individuals receiving public assistance from the County. Her participation in the WEP required her to work as a janitorial trainee and was a mandatory condition of receiving public assistance. On July 18, 2016, Plaintiff attended a group orientation at her assigned WEP site, the Monroe County Department of Social Services Building, located at 691 St. Paul Street in Rochester, New York. She was told that she would be reporting to Washington.

---

[1] These facts are taken from the complaint and the parties' Rule 56 facts statements are presumed to be true for the purpose of this motion.

Washington was hired by the County in February 1999 as a custodial worker with no supervisory responsibility. On his employment application, he marked "no" when asked whether he had been convicted of any violation other than a minor traffic violation. In March 2013, Washington was promoted to a maintenance and repair position with no supervisory responsibilities. On his application for promotion, he marked "yes" to the conviction question to which he had previously answered "no." As a result, he had to complete a "Conviction and/or Removal from Employment Explanation Form," on which he indicated that he had been convicted of "abuse" in 1988.

Brayton Connard, the Director of Human Resources for Monroe County, reviewed the Conviction Form pursuant to Article 23 of the Corrections Law to determine if the conviction would preclude Washington from promotion and/or continued employment with the County. Connard determined that, considering the length of time since the conviction and the nature of the maintenance job, the conviction did not preclude Washington's promotion.

During his employment with the County, Washington was disciplined twice: once in 2005 for putting his arms around a female employee and lifting her up into the air, allegedly injuring and frightening her (the "2005 lifting incident"), and once in 2008 for tardiness. Before Plaintiff's allegations in this case, the County had never received any complaints regarding Washington's interaction with WEP participants.

Although Washington's formal positions with the County were not supervisory in nature, he was involved the WEP program and was responsible for assigning participants at 691 St. Paul Street daily custodial chores and recording their working time. And as noted, Plaintiff was told that she would be reporting to him.

On July 18, 2016, Plaintiff's first day with the WEP, Washington did not say anything sexually harassing or discriminating to her. But on July 25 and 26 and August 1, Washington made several crude sexual remarks and gestures to Plaintiff. Then, on August 3, 2016, Washington asked Plaintiff to accompany him to the supply room so that she could help him gather janitorial supplies. Once Washington and Plaintiff were inside the supply room, Washington blocked the doorway and raped her.

When the County was notified of Plaintiff's allegations against Washington, it placed him on unpaid administrative leave pending an investigation. Shortly thereafter, Washington resigned. The County could therefore not require him to participate in an investigatory interview and could not discipline him. Had Washington not resigned, the County would have completed an investigation.

In November 2016, Plaintiff brought this action against Defendants.[2]

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the court must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to

---

[2] Plaintiff originally sued three other defendants: the Monroe County Department of Human Services, the Monroe County Work Experience Program, and Rochesterworks, Inc. The Court dismissed these defendants on July 25, 2018. ECF No. 42.

3

overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

The non-moving party may defeat the summary judgment motion by making a showing sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, "mere conclusory allegations or denials" are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

## DISCUSSION

Plaintiff asserts nine claims in this action:

1) assault against Washington;
2) battery against Washington;
3) false imprisonment against Washington;
4) intentional infliction of emotional distress against Washington;
5) negligent infliction of emotional distress against Washington;
6) a 42 U.S.C. § 1983 claim against Washington;
7) negligence against the County and the Landlord;
8) negligent hiring, training, retention, or supervision against the County; and
9) a New York Human Rights Law ("NYHRL") § 296 sexual harassment and discrimination claim against the County.

Only the County and the Landlord move for summary judgment; thus, the Court addresses claims six through nine only.

### I. Sixth Claim: Section 1983 *Monell* Claim Against the County

Plaintiff brings her § 1983 claim against Washington and does not state whether it is against him individually or in his official capacity, but the Court and the parties treat the claim as brought against him in both capacities. The official capacity claim is treated as a suit against the County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

4

To state a § 1983 claim, a plaintiff must allege a violation of constitutional or United States statutory rights by someone acting under color of state law.[3] "The Second Circuit has held that sexual harassment is a form of sex-based discrimination that violates the Equal Protection clause and, hence, gives rise to a Section 1983 cause of action." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1161 (E.D.N.Y. 2003).

However, a municipality[4] may only be liable under § 1983 if it "itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. In other words, municipalities are responsible only for their own illegal acts, and cannot be held vicariously liable under § 1983 for their employees' actions." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (citations and quotation marks omitted).

Thus, to hold the County liable under § 1983, Plaintiff "must establish liability under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Specifically, she must [establish] that her treatment was the result of an unconstitutional policy statement, ordinance, regulation or decision officially adopted and promulgated by the County's officers." *Piston v. Cty. of Monroe*, No. 08-CV-6435P, 2012 U.S. Dist. LEXIS 139520, at *47-48 (W.D.N.Y. Sep. 27, 2012). This need not be an express rule or regulation. *Id.* Instead,

> a plaintiff may establish an official policy or custom by demonstrating that: (1) a discriminatory practice of municipal officials was so persistent or widespread that it constituted a custom; (2) a discriminatory practice by subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials; (3) the municipality so consistently fail[ed] properly to investigate and address allegations of sexual harassment [that the] conduct be[came] an accepted

---

[3] Defendants argue that Washington was not acting under color of law because he was merely "a custodian asking another worker to help him gather janitorial supplies." ECF No. 45-7 at 33. However, an employee can be found to be acting under color of law where he exercises actual authority over the plaintiff-employee, even where there is no formal supervisory relationship. *Beattie v. Guilderland Cent. Sch. Dist.*, 124 F. Supp. 2d 802, 807 (N.D.N.Y. 2000). Here, there is evidence that Washington was Plaintiff's supervisor. Taking the evidence in the light most favorable to Plaintiff, the Court cannot find as a matter of law that Washington was not acting under color of law.

[4] Municipalities include counties. *See Silver Star Ass'n v. Cty. of Oswego*, 56 F. Supp. 2d 263, 266 (N.D.N.Y. 1999) ("Municipalities, including counties, can be liable under § 1983 . . . .").

5

custom or practice of the employer; or (4) the municipality's failure to train its employees demonstrated a deliberate indifference to the constitutional rights of those within its jurisdiction.

*Id.* (internal citations and quotations omitted).

Here, Plaintiff asserts *Monell* liability against the County based on a failure to train theory. Plaintiff's *Monell* claim fails.

"A municipality can indeed be held liable under Section 1983 for inadequate training, but only in very limited circumstances." *Perks*, 251 F. Supp. 2d at 1163. Specifically, "a municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (citing *Canton v. Harris*, 489 U.S. 378, 389 (1989)).

The Second Circuit has identified four requirements for demonstrating that a municipality's failure to train amounted to deliberate indifference. First, "the municipal policymaker must know 'to a moral certainty' that employees will confront a given situation." *Perks*, 251 F. Supp. 2d at 1163 (citing *Walker v. City of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1998)). Second, the situation must "either present[] employees with the type of difficult choices . . . that training or supervision would make less difficult, or employees [must] have a history of mishandling the situation." *Id.* Third, "the wrong choice by employees [must] frequently cause the deprivation of a citizen's constitutional rights." *Id.* And fourth, "at the summary judgment stage, plaintiffs must 'identify a specific deficiency in the [municipality's] training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" *Richardson v. City of N.Y.*, No. 04 Civ. 05314 (THK), 2006 U.S. Dist. LEXIS 92731, at *40 (S.D.N.Y. Dec. 21, 2006) (quoting *Green v. City of N.Y.*, 465 F.3d 65, 80-81 (2d Cir. 2006)).

6

Plaintiff has not established that these requirements are met here. *Perks* and *Richardson* help illustrate why.

In *Perks*, the plaintiff sued his employer to hold it liable for his supervisor's sexual harassment because the employer had not fully implemented a sexual harassment policy or trained its employees on sexual harassment, despite having received some complaints. 251 F. Supp. 2d at 1163. The court granted summary judgment to the employer because there was no evidence that it knew "'to a moral certainty' that sexual harassment was prevalent among its employees, such that its failure to take action [could] be characterized as deliberate indifference." *Id.*

In *Richardson*, the plaintiff's probation officer allegedly coerced the plaintiff into engaging in sexual acts. 2006 U.S. Dist. LEXIS 92731 at *1-2. The plaintiff sought to hold New York City liable for failing to properly train the probation officer. *Id.* at *2. The court granted summary judgment in favor of the city because the plaintiff did not show that "probation officers are so confused about, or oblivious to, the impropriety of such overt or implicit coercion that a failure of training and supervision makes it more likely that they will engage in the improper behavior." *Id.* at *29. In other words, the plaintiff did not show that probation officers face a difficult choice and "require some sort of training to educate them that they should not be coercing sexual activity with people under their supervision." *Id*. (citing *Walker*, 974 F.2d at 299 ("Where the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to train or supervise.")). Further, the plaintiff failed to show that the city was aware of a pattern of misconduct but failed to institute appropriate training or supervision in response, and also failed to identify a specific deficiency in the training program that was closely related to the injury. *Id.* at *30, 37.

Similarly, here, Plaintiff fails to show that the County knew "to a moral certainty" that sexual harassment was prevalent among its employees, or that its employees would confront a sexual harassment situation, and that its failure to act amounted to deliberate indifference. Plaintiff has identified no pattern of misconduct that a training program would rectify. Instead, the evidence shows that, before Plaintiff's allegations, other than the complaint from the co-worker about the 2005 lifting incident, the County had never received any complaints of harassment or discrimination against Washington. The County had never received any complaints regarding Washington's interactions with WEP participants, and it had no record of any complaints of sexual harassment or hostile work environment within the last ten years at the 691 St. Paul Street location.

Plaintiff has also not shown that County employees like Washington face a difficult choice and "require some sort of training to educate them that they should not be" sexually harassing and raping "people under their supervision." *Richardson*, 2006 U.S. Dist. LEXIS 92731, at *29.

Accordingly, the Court finds that Plaintiff has failed to establish a *Monell* claim against the County and GRANTS summary judgment in favor of the County on Plaintiff's sixth claim. This claim remains pending against Washington in his individual capacity.

## II. Seventh Claim: Negligence Against the County and the Landlord

In her seventh claim, Plaintiff claims that the County was negligent because it failed to investigate the nature of Washington's 1988 "abuse" conviction, and if it had, it would have discovered that the conviction was for sexual assault. She also claims that the County failed to properly train or supervise its employees on sexual harassment and thereby allowed Washington to sexually harass and rape Plaintiff.

Plaintiff's seventh claim fails. First, "[a] municipality cannot be sued for common law negligence unless the municipality owed a special duty to the plaintiff." *Paul v. City of N.Y.*, No.

16-CV-1952 (VSB), 2017 U.S. Dist. LEXIS 156416, at *26 (S.D.N.Y. Sep. 25, 2017); *see also Hunter v. Cty. of Orleans*, No. 12-CV-6173, 2013 U.S. Dist. LEXIS 164310, at *18 (W.D.N.Y. Nov. 19, 2013) (granting summary judgment on plaintiff's negligence claim against the county where no special relationship was established). Plaintiff has not asserted or established a special duty or relationship here. *See Horan v. Boces*, No. CV 14-7345 (LDW) (GRB), 2015 U.S. Dist. LEXIS 144754, at *8 (E.D.N.Y. Oct. 26, 2015); *Genao v. Bd. of Educ.*, 888 F. Supp. 501, 508 (S.D.N.Y. 1995) (both holding that employer-employee relationship does not create special duty).

Second, to the extent Plaintiff attempts to state an independent claim for negligent investigation, New York does not recognize such a claim. *Duartes v. Cty. of Nassau*, No. 07-CV-2929 (JS) (WDW), 2008 U.S. Dist. LEXIS 131330, at *23-24 (E.D.N.Y. Sep. 30, 2008) (collecting cases). Rather, the failure to investigate an employee is part of a negligent hiring, training, supervision, or retention claim, which Plaintiff already asserts in her eighth claim. *Marcinkowski v. City of Buffalo*, No. 14-CV-809S, 2019 U.S. Dist. LEXIS 139817, at *32 (W.D.N.Y. Aug. 18, 2019) ("A cause of action for negligent hiring or retention requires allegations that the employer . . . failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee."). Similarly, the failure to train and supervise aspect of Plaintiff's seventh claim is indistinguishable from her eighth claim. *See*, *e.g.*, *Bouche v. City of Mount Vernon*, 2012 U.S. Dist. LEXIS 40246, at *31 (S.D.N.Y. Mar. 22, 2012) (dismissing negligence claim against city as duplicative of negligent hiring, retention, supervision and training claim). Accordingly, Plaintiff's negligence claim against the County fails.

Plaintiff also lodged her negligence claim against the Landlord. In its motion for summary judgment, the Landlord argues that it cannot be held liable for Plaintiff's injuries because it is an

out-of-possession landlord that did not retain responsibility for maintaining or securing the premises. *See Tambriz v. P.G.K. Luncheonette, Inc.*, 124 A.D.3d 626, 628 (2d Dep't 2015) ("[A]n out-of-possession landlord is not liable for injuries that occur on the leased premises due to the criminal acts of third parties unless it has retained control over the premises or is contractually obligated to provide security."). Plaintiff does not dispute or even address this issue in her response. The Court therefore considers Plaintiff to have abandoned this claim against the Landlord. *See Gaston v. City of N.Y.*, 851 F. Supp. 2d 780, 796 (S.D.N.Y. 2012) (deeming claims abandoned when plaintiff "failed to respond or even mention these claims in his opposition brief to defendants' summary judgment motion").

Accordingly, the Court GRANTS summary judgment to the County and the Landlord on Plaintiff's seventh claim.

### III. Eighth Claim: Negligent Hiring, Retention, Training, or Supervision

In her eighth claim, Plaintiff asserts that the County was negligent in retaining Washington after disciplining him for the 2005 lifting incident and after learning of his 1988 conviction in 2013. She argues that these incidents should have raised a reg flag and prompted the County to investigate Washington.

However, the County correctly argues that Plaintiff's negligent hiring, retention, training, or supervision claim is barred by New York workers' compensation law. "It is well settled within the Second Circuit that common law negligence claims are barred by the New York[] Workers' Compensation Law." *Corrado v. N.Y. Unified Court Sys.*, 163 F. Supp. 3d 1, 26 (E.D.N.Y. 2016) (citation and quotation marks omitted) (citing N.Y. Workers' Comp. Law § 29(6) and collecting cases barring negligent supervision and retention claims); *see also Varela v. Flintlock Constr., Inc.*, 01 CIV. 2736 (DLC), 2002 U.S. Dist. LEXIS 3521, at *5 (S.D.N.Y. Mar. 5, 2002) (barring

negligence claim against employer for failing to supervise or prevent its employee's harassing conduct); *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001) (barring negligent supervision and retention claims arising out of sexual assault by a co-worker).

Plaintiff argues that the County waived this defense by failing to plead it as an affirmative defense in its answer, and that the Court should not decide this issue now but should instead defer to the Workers' Compensation Board to determine whether Plaintiff was an "employee" for workers' compensation purposes. The Court rejects both arguments.

First, courts have permitted defendants to raise the workers' compensation defense for the first time on summary judgment in the absence of bad faith or undue prejudice. *See Carnley v. Aid to Hosps.*, 975 F. Supp. 252, 254 (W.D.N.Y. 1997) (allowing workers' compensation defense to be raised for the first time on summary judgment where the opposing party was not prejudiced); *Zapata v. Riverside Study Ctr., Inc.*, No. 10 Civ. 6283 (CM), 2012 U.S. Dist. LEXIS 69246, at *23 (S.D.N.Y. May 16, 2012) (waiver of workers' compensation defense only accomplished by a defendant ignoring the issue to the point of final disposition); *see also generally Anthony v. City of N.Y.*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (holding that, although affirmative defenses must be raised in a responsive pleading, district courts have the discretion to construe a motion for summary judgment as a Federal Rule of Civil Procedure 15(a) motion for leave to amend the answer, and Rule 15's instruction that leave to amend be freely given supports amendment absent a showing of bad faith or undue prejudice).

Here, Plaintiff does not assert bad faith or prejudice. To the contrary, Plaintiff briefed the workers' compensation issue in her opposition to the County's motion for summary judgment. *See Ebert v. Holiday Inn*, No. 11 CIV. 4102, 2014 U.S. Dist. LEXIS 12368, *27-28 (S.D.N.Y. Jan. 31,

2014), *aff'd*, 628 F. App'x 21 (2d Cir. 2015) (summary order). The Court thus finds that the workers' compensation defense is not waived.

Second, the Court need not defer to the Workers' Compensation Board for a determination of whether Plaintiff was an employee: Plaintiff does not dispute that she was a County employee, and both New York courts and the New York Workers' Compensation Board have held that WEP participants are employees for workers' compensation purposes. *See Pizzatola v. Ulster Cty. Dep't of Soc. Servs.*, 156 A.D.2d 873, 874 (3d Dep't 1989) (holding that WEP participants are employees); *Employer: City of N.Y. Dep't of Parks & Rec.*, 2000 NY Wrk. Comp. LEXIS 121793, at *2 (N.Y. Wrk. Comp. Bd. Dec. 19, 2000) ("It is well established that recipients of public assistance who are required to participate in a workfare program are considered employees and, therefore, if they are injured in the course of their county assignment, they are entitled to receive Workers' Compensation Benefits.").

Thus, the Court can—and does—determine as a matter of law that Plaintiff was an employee for workers' compensation purposes. *See Santigate v. Linsalata*, 304 A.D.2d 639, 640 (2d Dep't 2003) (holding that the question of whether a person is an employee for workers' compensation purposes can be answered by a court if the applicable statutes are unambiguous and the question is purely one of law). Accordingly, the Court finds that Plaintiff's eighth claim is barred and GRANTS summary judgment in the County's favor.

### IV. Ninth Claim: Discrimination and Hostile Work Environment Under NYHRL

In her final claim, Plaintiff argues that the sexual comments, propositions, and innuendo that Washington made to her on the days before the sexual assault, and the assault itself, created a hostile work environment and constituted sex and gender discrimination. The County argues that Plaintiff's NYHRL claim is barred because she failed to identify it in her notice of claim.

"The purpose of the notice of claim requirement is to allow the municipal corporation adequate opportunity to investigate the circumstance[s] surrounding the [incident] and explore the merits of the claim while the information is likely to be available." *Keating v. Gaffney*, 182 F. Supp. 2d 278, 292 (E.D.N.Y. 2001) (quoting *Wai Man Hui v. Town of Oyster Bay*, 267 A.D.2d 233, 234 (2d Dep't 1999)). While the notice does not require "magic language setting forth each claim," *DC v. Valley Cent. Sch. Dist.*, No. 7:09-cv-9036 (WWE), 2011 U.S. Dist. LEXIS 90260, at *6 (S.D.N.Y. June 29, 2011), it must "include[] enough information to enable the municipality to investigate the claim adequately." *Keating*, 182 F. Supp. 2d at 292 (E.D.N.Y. 2001). "A theory of liability not mentioned in the notice of claim generally may not be asserted in a subsequent lawsuit." *Id.*

Here, Plaintiff's notice of claim states: "This is a claim to recover monetary damages for personal injuries, pain and suffering, and lost wages, caused by the negligent and/or reckless actions of the County of Monroe . . . on or about August 3, 2016 when Ronicca Ellis was sexually assaulted." The notice does not directly or indirectly reference discrimination or hostile work environment theories of liability. Indeed, it only mentions the assault and only identifies the date of August 3, 2016; Washington's harassing remarks occurred on July 25 and 26 and August 1. *See Ferlito v. Cnty. of Suffolk*, No. 06-CV-5708, 2007 U.S. Dist. LEXIS 85523, at *10 (E.D.N.Y. Nov. 19, 2007) (concluding that claim for "negligent hiring, training or retaining practices" was not sufficiently specified in plaintiff's claim because "[t]he facts alleged in the notice of claim are limited to the occurrences of July 24, 2005 and the facts with respect to negligent hiring, training and retention would, of necessity, have occurred prior to that date"); *T.P. v. Elmsford Union Free Sch. Dist.*, No. 11 CV 5133 (VB), 2012 U.S. Dist. LEXIS 178454, at *22-23 (S.D.N.Y. Nov. 26, 2012) (dismissing NYHRL claim where the notice only mentioned defendant's negligence,

13

carelessness and recklessness with respect to a physical examination and made no mention of retaliation or expulsion); *Hartley v. Rubio*, 785 F. Supp. 2d 165, 185 (S.D.N.Y. 2011) (dismissing retaliation and discrimination claims where notice only included allegations relating to claims for assault and battery). Accordingly, the Court finds that Plaintiff's notice of claim is insufficient to give the County notice of the NYHRL claim.

Plaintiff argues that, even if the notice of claim is insufficient, that requirement does not apply to her NYHRL claim against the County and that the County waived this defense by failing to plead it as an affirmative defense. Both arguments fail.

First, New York County Law § 52 requires a notice of claim to be filed for any action for damages brought against a county, including NYHRL actions. *See Rice v. Wayne Cty.*, No. 09-CV-6391T, 2010 U.S. Dist. LEXIS 125939, at *10 (W.D.N.Y. Nov. 30, 2010); *O'Connell v. Onondaga Cty.*, No. 5:09-CV-364 (FJS/ATB), 2012 U.S. Dist. LEXIS 194831, at *40 (N.D.N.Y. Feb. 9, 2012); *Hamilton v. Cty. of Onondaga*, No. 5:15-cv-01333 (BKS/TWD), 2018 U.S. Dist. LEXIS 161647, at *50 (N.D.N.Y. Sep. 21, 2018).

Second, "[a] notice of claim is a condition precedent to a suit. The failure of the defendants to plead the absence of a notice of claim as an affirmative defense is not a waiver of that defense." *Roca v. Pozzi*, No. 99 Civ. 10583 (GAY), 2001 U.S. Dist. LEXIS 27326, at *21 (S.D.N.Y. Sep. 27, 2001) (dismissing NYHRL claim on summary judgment); *see also generally Richter v. Monroe Cty. Dep't of Soc. Servs.*, No. 01-CV-6409 CJS, 2005 U.S. Dist. LEXIS 5800, at *31 (W.D.N.Y. Feb. 11, 2005) (dismissing NYHRL claim on summary judgment).

Accordingly, the Court GRANTS summary judgment in favor of the County as to Plaintiff's ninth claim.

## CONCLUSION

For the reasons stated, the County and the Landlord's motion for summary judgment (ECF No. 45) is GRANTED and they are DISMISSED from this case. The Clerk of Court is directed to enter judgment in their favor as to the claims against them (claims six through nine) and terminate them as parties. By separate order, the Court will set a status conference to set a trial date for the remaining claims against Washington.

IT IS SO ORDERED.

Dated: September 16, 2019
       Rochester, New York

                                                HON. FRANK P. GERACI, JR.
                                                Chief Judge
                                                United States District Court